UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LACRETIA FLUELLEN,** | **CASE NO. 23-CV-1606** |
| Plaintiff, | |
| v. | |
| **CITY OF PHILADELPHIA and DISTRICT COUNCIL 33,** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DISTRICT COUNCIL 33's MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff, proceeding pro se, has filed an action against her former Union, District Council 33, and her former employer, the City of Philadelphia, alleging discriminatory acts committed during her employment by the City, which ended when she resigned on November 1, 2019. The Plaintiff filed her Complaint in the Philadelphia Court of Common Pleas, and the Defendant City of Philadelphia removed the case to this Court. District Council 33, which had not been served prior to removal, received service of the Complaint by mail on May 2, 2023, and moves to dismiss this action for failure to state actionable claims pursuant to F. R. Civ. P. 12(b)(6). We respectfully submit this Memorandum of Law in support of the motion to dismiss.

**II.   STATEMENT OF QUESTIONS INVOLVED**

1. Has Plaintiff stated an actionable claim against District Council 33 for either unlawful discrimination or breach of its duty of fair representation? (Suggested answer: No).

  2.  Are Plaintiff's claims charging the Union with violations of Title VII, the Americans With Disabilities Act, and the Age Discrimination Act, barred by her failure to file a charge of discrimination with federal or state antidiscrimination agencies?  (Suggested answer: Yes).

## III. FACTS

The following facts are either explicitly described or can be reasonably inferred from the statements contained in the Plaintiff's Complaint.

The Plaintiff, Lacretia Fluellen, was, before she resigned in 2019, employed by the City of Philadelphia.  The defendant Union, District Council 33, represents employees in the bargaining unit in which the Plaintiff was employed.[1]  The Plaintiff worked in the Free Library, and later at the Board of Pensions and Retirement, between 2011 and 2019.  She had various health issues during her employment.  Complaint ¶¶ 6, 9, 12.  She began working full-time at the Library in 2014, and was promoted to a position at the Pension Board in 2019.  *Id*. ¶¶ 11, 13.  She believed the salary she was paid at the Pension Board was incorrect, and "reached out" to Bobby Davis, whom she identifies as the President of District Council 33,[2] who suggested she not complain about the amount

---

[1] District Council 33 is formally known as AFSCME District Council 33.  It is an affiliate of the American Federation of State, County and Municipal Workers and, pursuant to state law, is the collective bargaining agent of the nonprofessional employees of the City of Philadelphia such as the Plaintiff.  *See* 43 P.S. § 1101.2003; *Philadelphia Fraternal Order of Correctional Officers v. Rendell,* 558 Pa. 229*,* 736 A.2d 573, 578 (1999) (discussing the 1961 recognition ordinance saved by PERA § 2003 and holding that the ordinance "is not arbitrary or unreasonable and is designed to meet legitimate government interests [and] does not violate the equal protection provisions of the Pennsylvania Constitution").  The Council's constituent local unions represent departmental groupings of City workers.  Ms. Fluellen was a member of Local 696, which is listed on her Cover Sheet filed in the Court of Common Pleas in the underlying action, but appears nowhere in the caption or the body of the Complaint itself.

[2] Bobby Davis was in fact not President of District Council 33, but was its Vice-President.  He was also the President of Local 696, the Plaintiff's local union.  He is now retired.  Anthony Dinkins, mentioned later, succeeded Davis as President of Local 696.

of her salary during the period of her probation. *Id*. ¶ 18.[3] She was rejected from her position at the Pension Board and returned on September 19, 2019 to her job at the Library, where she worked until her health conditions flared up and she resigned on November 1, 2019. *Id*. ¶¶ 26, 29-31. She "reached out" to Anthony Dinkins, identified as a D.C. 33 union representative, for "assistance regarding her Probationary Rejection" and "to inform him of reasons for her Resignation," *id*. ¶ 37, but after saying he would "look into her Claims and get back to her" never responded to her thereafter. *Id*. ¶ 38. Paragraph 39 asserts the Union was aware of her "permanent status" and "did Intentionally hide" that from her "to prevent her from the Opportunity to Defend Herself." She says, in paragraphs 30 and 31, that she suffered from a flare up of a medical condition, and in paragraph 42 that she has been unemployed since November 1, 2019, the day she states she resigned from the Free Library due to health reasons. She seeks damages – presumably against both defendants – for back pay, front pay, and pension adjustments, but does not seek reinstatement to City employment.

## IV. ARGUMENT

### A. The Plaintiff Fails to Adequately Plead a Cause of Action Against Her Union for Breach of Its Duty of Fair Representation.

From the statements she has made in her complaint, Ms. Fluellen may be alleging that her Union, District Council 33, has discriminated against her and, inferentially, has breached its duty of fair representation. As an employee of the City of Philadelphia, a political subdivision of the Commonwealth, Ms. Fluellen was a public employee covered by state law, and the contours of the Union's duty of fair representation owed to her are governed by state law, which substantively

---

[3] Philadelphia's Home Rule Charter provides that permanent Civil Service employees of the City may only be dismissed for just cause, except during their six-month probationary period for each new position. Permanent civil servants promoted to new positions who are rejected during their probation have the right to return to their former position. *See* 351 Pa. Code §§ 7-303, 7-401(j), (q).

3

resembles those federal principles governing the private sector. *See Jackson v. Temple University*, 721 F.2d 931, 933 (3d Cir. 1983); *Dubose v. District 1199C, National Union of Hospital and Health Care Employees*, 105 F. Supp.2d 403, 416-417 (E.D. Pa. 2000) (discussing and comparing state and federal DFR law).

### 1. Breach of Duty: General Principles

Unions act as fiduciaries in representing their members in their disputes with employers. Yet to enable them to perform this function without undue judicial supervision, courts afford unions a broad range of discretion in representing their members' interests, both with regard to grievances challenging employee discipline and otherwise. *Taylor v. Pennsylvania State Corrections Officers' Association*, 2023 Pa. Super. 44, 291 A.3d 1204 (2023) ("it is well-established under Pennsylvania law that unions enjoy significant discretion in declining to pursue grievances raised by the individuals that they represent"); *Dorfman v. Pennsylvania Social Services Union Local 668*, 752 A.2d 933, 936 n.5 (Pa. Cmwlth.2000) ("a labor union has broad discretion to receive, pass upon and withdraw grievances"); *Hughes v. Council 13, AFSCME*, 157 Pa. Cmwlth. 96, 629 A.2d 194, 195 (1993) ("A union is guilty of unfairly representing an employee if its refusal to carry a grievance through to arbitration is due to arbitrariness, discrimination or bad faith. . . . A union will be liable for breach of a duty of fair representation only when bad faith on the part of the union is shown."), *affirmed*, 536 Pa. 539, 640 A.2d 410 (1994). For that reason, "a public employees' union can be held liable to its members only for acts of bad faith, and not for negligence in processing a grievance." *Waklet-Riker v. Sayre Area Educ. Ass'n*, 656 A.2d 138, 141 (Pa. Super. 1995) (no cause of action for breach of contract against a public-employee union in connection with its representation of an employee). With regard to its handling of member grievances, the duty contemplates a union's "wide range of reasonableness" that may not be infected by bias.

The District Court in *Lopez v. Transp. Workers Union Local 234*, 2017 U.S. Dist. LEXIS 93674 at *11-13 (E.D. Pa. June 19, 2017) summarized the scope of this duty of fair representation unions owe to their members:

> "A union bears a duty of fair representation to the members of the bargaining unit that it is certified to serve. In return, the members and employees are beneficiaries of a fiduciary obligation owed to them by the union." *Plouffe [v. Gambone]*, 2012 U.S. Dist. LEXIS 85405, 2012 WL 2343381, at *9 (citing *Falsetti v. United Mine Workers*, 400 Pa. 145, 161 A.2d 882, 895 (Pa. 1960); *Case v. Hazelton Area Educ. Support Personnel Ass'n*, 928 A.2d 1154, 1158 (Pa. Commw. Ct. 2007)). A union may breach its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith." *Acosta v. HOVENSA LLC*, 529 F. App'x 297, 299-300 (3d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)); *see also Casner v. AFSCME*, 658 A.2d 865, 870 (Pa. Commw. Ct. 1995). "To demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff or the plaintiff's class and that the hostility negatively affected the union's representation of the plaintiff." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 371-72 (E.D. Pa. 2015) (quoting *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2005 U.S. Dist. LEXIS 171, 2005 WL 35893, at *9 (E.D. Pa. Jan. 6, 2005)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Acosta*, 529 F. App'x at 300 (quoting *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67).
>
> When considering whether a union's actions fall within that range, courts "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 78. That standard "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong," and even if its errors in judgment may rise to the level of negligence. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998); *see also United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."); *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970) (holding that "proof that the union

may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation" and a union has discretion to "settle or even to abandon a grievance, so long as it does not act arbitrarily"); *Weber v. Potter*, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) ("[A] union has broad discretion to determine what issues to raise in a grievance proceeding and how those issues are to be raised.").

Furthermore, when reviewing representation at a grievance hearing, courts must give "due regard for the fact that both the advocates and the tribunal members are laymen," not lawyers. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 961 (3d Cir. 1981); *see also Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 419 (E.D. Pa. 2014), *aff'd*, 587 F. App'x 731 (3d Cir. 2014). Thus, even if a plaintiff's allegations that the union failed to develop certain arguments are well-founded, they constitute mere disagreements over tactics and strategy, not a breach of the duty of fair representation. *DeFillippes v. Star Ledger*, 872 F. Supp. 138, 141 (D.N.J. 1994).

It nevertheless remains well established that a union must "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez*, 525 U.S. at 44 (quotations omitted). To fulfill the duty of fair representation a union's representation "must be vigorous enough so that available opportunities to present [a] grievance are utilized and sufficiently thorough so that the basic issues are presented in an understandable fashion." *Findley*, 639 F.2d at 961. A union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Lopresti*, 2013 U.S. Dist. LEXIS 79453, 2013 WL 2449190, at *4 (quoting *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir. 1981)).

Finally, any omissions by the union must be shown to have "damaged the grievance presentation." *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 959 (3d Cir. 1981). But the "mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious." *Id.,* 639 F.2d at 958; *see also, e.g., Bazarte*, 429 F.2d at 872 (3d Cir. 1970) (union may properly decide to withdraw grievance it considers "hopeless" even if union officials were "unwise in [their] judgment or negligent in arriving at [their]

conclusion"); *Cupid v. Local 116 IUE,* 1993 U.S. Dist. LEXIS 744 at *18, 1993 WL 21794 at *6-7 (E.D.Pa. January 26, 1993) (plaintiff's disagreement over allegedly "convoluted and meritless procedural reasons for [union's] ignoring [his] grievances" insufficient to raise issue of material fact; "without any evidence of bad faith or animus, there is nothing to suggest that [the union's] 'excuses' were not in fact legitimate explanations"); *Kintsche v. Woodward*, 629 F. Supp. 1349, 1357-58, 1359 (E.D. Pa. 1985) (member may not prevail even if union and its attorneys "negligently formed or conveyed" erroneous but sincerely-believed legal opinion regarding merits of member's grievance; union officials made "good faith effort both before and after plaintiff's layoff to evaluate and apply rulings of the NLRB to plaintiff's claim").

### 2.  Comparison of Federal and Pennsylvania DFR Law

While the substantive scope of a union's duty of fair representation is similar under both Pennsylvania and federal law, the judicial remedies available to members who have been wronged differ. A public employee in Pennsylvania who disagrees with her union's refusal to arbitrate her grievance has the right to sue her union only for acts of bad faith. *Dykes v. SEPTA*, 68 F.3d 1564, 1571 (3d Cir. 1995), *cert. den*., 517 U.S. 1142 (1996). *Dubose v. District 1199C, National Union of Hospital and Health Care Employees*, 105 F. Supp.2d 403, 416-417 (E.D. Pa. 2000) summarizes the procedural differences between federal and Pennsylvania DFR actions:

> [C]laims of negligence, breach of contract and bad faith under the Pennsylvania Public Employment Relations Act, ("PERA"), 42 P.S. 1101.101 et seq., . . . are governed by Pennsylvania labor law, not federal law. *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983); *Philadelphia Ass'n of Interns & Residents v. Albert Einstein Medical Center*, 369 A.2d 711, 713-14 (Pa. 1976).
>
> Under PERA, an aggrieved public employee's sole remedy in the courts when a union has breached its duty of fair representation by acting in bad faith, is an action in equity to compel arbitration. *Martino v. Transp. Workers' Union, Local 234*, 480 A.2d 242, 252 (Pa. 1984); *Waklet-Riker v. Sayre Area Educ. Ass'n*, 656 A.2d 138, 141 (Pa. Super. 1995); *Speer v. Philadelphia Housing Auth.*, 533 A.2d 504, 506 (Pa. Cmwlth. 1987). Accordingly, under Pennsylvania law, there is no cause of action for

breach of contract against a union in connection with its representation of an employee. *Waklet-Riker*, 656 A.2d at 141 (trial court correctly dismissed claim for breach of contract because such a claim is not cognizable under PERA). Nor can a union be held liable for negligence in processing or failing to process a grievance. *Id.* at 141 ("a public employee's union can be held liable to its members only for acts of bad faith, and not for negligence in processing a grievance"). Similarly, employees of public institutions cannot sue their employer for breach of contract damages. *Martino*, 480 A.2d at 252; *Ziccardi v. Commonwealth of Pennsylvania*, 456 A.2d 979, 980-81 (Pa. 1982) ("an employee has no right to sue his employer in equity and assumpsit for wrongful discharge where his union has refused to proceed to arbitration"); *Runski v. Am. Fed'n of State County & Mun. Employees*, 598 A.2d 347, 350 (Pa. Cmwlth. 1991), *aff'd.*, 642 A.2d 466 (Pa. 1994). . . .

*       *       *

. . . More specifically, Pennsylvania courts have not made an aggrieved employee's DFR claim under PERA contingent upon proving that the employer breached the collective bargaining agreement. *Martino*, 480 A.2d at 251 (if employee establishes union's breach of its duty of fair representation, court may order arbitration); *Ziccardi*, 456 A.2d at 980-81 (evidence of breach not required to establish union's liability). . . . The issue of just cause, according to the Court, is relevant to the issue of damages, not liability. *Id.* Therefore, unlike a hybrid DFR claim for damages under federal law, to be entitled to equitable relief, there is no requirement under PERA that an aggrieved employee prove that he was discharged in violation of the collective bargaining agreement. *Id.*; *Hughes v. Council 13, Am. Fed'n of State, County & Mun. Employees*, 629 A.2d 194, 195-96 (Pa. Cmwlth. 1993), *aff'd*, 640 A.2d 410 (Pa. 1994). To be entitled to equitable relief, the aggrieved employee must only prove that the Union acted in bad faith. *Martino*, 480 A.2d at 252.

*See also, e.g., Lopresti v. County of Lehigh*, 2013 U.S. Dist. LEXIS 79453 at *20-21(E.D. Pa. June 6, 2013) (as the law provides the union a "wide range of reasonableness" in performing its functions subject to "good faith and honesty of purpose in the exercise of its discretion," facts showing a union only "acted negligently and did not perform his due diligence as her union representative . . . is not sufficient to show breach of duty of fair representation" (citing *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970) (finding it is not enough for the plaintiff to prove that the union acted negligently or exercised poor judgment))), *aff'd*, 572 F. App'x 133 (3d Cir. 2014); *Castellani v. Bucks County Municipality*, 2008 U.S. Dist. LEXIS 15861 at *8-9 (E.D. Pa. February

8

28, 2008) ("a public employee's only recourse in the event of a dispute with her employer arising out of a collective bargaining agreement is arbitration under the agreement" and the employee's sole remedy is "an order to compel arbitration of the underlying grievance").

Accordingly, under Pennsylvania law, a labor union, "like any fiduciary, must be given broad discretion in determining whether to pursue the remedy" of arbitration. *Ziccardi v. Commonwealth*, 500 Pa. 326, 330, 456 A.2d 979, 981 (1983). And by requiring a showing of a union's bad faith in order to prevail on a breach-of-duty claim, the *Ziccardi* rule "insulates the union from exposure where, after a proper exercise of discretion, it declines to process a frivolous and meritless grievance." *Martino v. Transport Workers' Union*, 505 Pa. 391, 407, 480 A.2d 242, 250 n.12 (1984). It also permits the union to freely discharge its statutory obligation to "make the hard choices required of all fiduciaries when the separate interests of their beneficiaries conflict among themselves . . . or with the interest of the whole." *Id*.

### 3. Pleading DFR Claims

As is the case with any claim, general principles of fact pleading apply to claims for breach of a union's duty of fair representation. Specific facts, not general allegations or legal argument, are required to adequately plead in a Complaint that a union has acted in bad faith in evaluating an employee's grievance. *See, e.g., Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 961 (3d Cir. 1980) ("[a] mere allegation that a grievance 'should have been' processed through a grievance procedure does not satisfy th[e] requirement" that member show union acted in bad faith in processing grievance); *Hubicki v. ACF Industries, Inc.,* 484 F.2d 595, 526 (3d Cir. 1973) (allegations "asserting the breach of a union's duty of fair representation must contain more than conclusory statements charging discrimination in order to be actionable"); *Taylor v. PSCOA*, 291 A.3d at 1210 ("it is incumbent upon a plaintiff to 'plead any material facts upon which a claim of bad faith could be based' in the

context of an action for an alleged breach of the duty of fair representation"); *Dorfman*, 752 A.2d at 936 (allegations "that the Union failed to fully investigate [employee's] grievance, failed to follow its normal and customary practices and failed to process his grievance to arbitration" do not lead to inference "that the Union's treatment of [his] grievance was arbitrary, discriminatory or in bad faith"); *Hughes v. Council 13*, 629 A.2d at 195 ("the petitioner must allege arbitrariness on the union's part by specific facts; mere conclusory allegations in the pleadings without supporting factual allegations are not sufficient"); *Runski v. AFSCME Local 2500*, 142 Pa. Cmwlth. 662, 598 A.2d 347, 351 (1991) (conclusory allegations do not satisfy requirement that employee, to recover damages, must show by specific facts that employer actively participated in the Union's bad faith or conspired to deny employee's rights under collective bargaining agreement).

### 4. The Complaint Asserts No Viable DFR Claim

The Plaintiff, acting without the assistance of counsel, is to be commended for attempting to thoroughly explain what she sees as a violation of the law. But she pleads no facts demonstrating that District Council 33 handled her case in a manner that discriminated against her or exceeded its wide range of reasonableness. Most importantly, she states no facts to show that the Union acted in bad faith in representing her interests. To warrant this case proceeding beyond the pleading stage, the Plaintiff must explain what it is she feels the Union did wrong in representing or responding to her complaints, and how its actions caused her any injury. To the extent she is claiming the Union violated the federal employment discrimination statutes she has cited, she must also state facts showing that, not only did the Union act improperly, it did so with intent to discriminate against her.

None of the Plaintiff's factual allegations point to such a conclusion. The damage done with respect to her terms and conditions of employment (the only things of hers her union has the authority to try to protect), so far as her pleading discloses, consists of two items: her being paid the

incorrect pay rate at the Board of Pensions; and her erroneously being rejected for continued employment at the Pension Board because, for some reason she fails to support, she was not really on probation any longer. She does state facts that allege she was at a higher pay rate than what she was being paid, during the five months of her employment at the Pension Board – resulting in a pay loss, according to her numbers, of perhaps $1500. *See* Complaint ¶¶ 13-17. Bobby Davis suggested that she not press that claim during the time of her probation; and during that period of her at-will employment, his advice was not necessarily illogical – and certainly, then, not arbitrary.[4] Even so, had she been intent on doing so, despite Davis's advice, she could have forged ahead and lodged a complaint regarding her pay, on her own, with or without the union's assistance. The facts alleged do not suggest bad faith, much less bad faith motivated by any discriminatory intent.

Her other complaint, though – that she was not really probationary and was entitled to due process/just cause protection in her position at the Pension Board – is borne out by *no* facts, only her own theory that, because Pensions was still allegedly paying her wages, she in fact "obtained Permanent Status" on October 4 at the Board of Pensions, despite her having physically departed that position to return to the Library on September 23 – before six months had gone by – which "Voided [her] Probationary Rejection." *Id*. ¶¶ 29, 32-35. Her legal conclusion that she achieved permanent status, despite her probationary rejection and return to her former position, is belied by the Philadelphia Home Rule Charter's requirement that employees in positions within the Civil Service must serve a six-month period of probation before achieving permanent status. 351 Pa. Code §§ 7-303, 7-401(j), (q). To the extent her assertion is true that Anthony Dinkins told her he

---

[4] Or, as Judge O'Neill put it, "without any evidence of bad faith or animus, there is nothing to suggest that [the union's] 'excuses' were not in fact legitimate explanations." *Cupid v. Local 116 IUE,* 1993 U.S. Dist. LEXIS 744 at *18, 1993 WL 21794 at *6-7.

11

would "look into" and "get back to her" regarding her analysis of her status, his not getting back to her caused her no injury, as her theory of why she was permanent was fanciful at best. Ms. Fluellen had worked in a new position, which required her to serve probation, and she was (according to the timeline in her Complaint) in fact rejected from the new job a little after only five months had passed. And when she in fact resigned from the City several weeks later, even had Mr. Dinkins looked into the matter, there would have been little point in his confirming to a resigned employee that there was no worthwhile course for her to pursue at that time.

In short, no claim of a contractual or legal breach, or of the union's improperly representing her, is supported by the seven pages of facts and argument Ms. Fluellen has offered in her pleading. Absent facts showing the Union's bad faith, no claim for breach of its duty of fair representation is stated. Indeed, she nowhere uses the term "bad faith" or any similar label to describe the Union's conduct. And, while we infer from her allegations that the Union's bad faith must be what she is alleging, there are no *facts* to support any such conclusion.[5] That it was the Union acting in bad faith

---

[5] Most of the case law cited in this Brief involves the union's handling, or mishandling, of a member's grievance or arbitration, or its refusal to process a member's grievance or arbitration request. Fluellen does not allege in her complaint that she filed a grievance or asked the union to pursue a grievance, or requested the union to proceed to arbitration regarding either of the two substantive issues she inquired about. Exhaustion of the grievance process is a prerequisite for asserting a claim in court that the union breached its duty. *Clayton v. UAW*, 451 U.S. 679, 681 (1981); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965) ("individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress" (original emphasis)); *Anjelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3d Cir. 1999) (a member's duty to exhaust remedies available under the contractual grievance procedure in order to pursue judicial claims against her union for breach of its duty applies as well to Title VII discrimination claims). At this initial stage of the case, we are assuming that, liberally construed, the Complaint may be asserting that, before her resignation, the Plaintiff had requested the union's officers to pursue a grievance her regarding the issues she brought to their attention. Should the Court not construe her pleading so broadly, then Plaintiff's failure to invoke and pursue her available grievance remedies provides an added reason to dismiss her Complaint.

that caused any injury to Ms. Fluellen's interests is not a plausible inference arising from the facts she has provided. As it presently stands, the Complaint fails to state a claim – by failing to assert facts necessarily supporting that conclusion – that the Union acted in bad faith or that it otherwise breached the duty of fair representation it owed the Plaintiff.

As the Plaintiff has failed to state a claim upon which relief can be granted, her action against District Council 33 should be dismissed.

### B. PLAINTIFF HAS FAILED TO EXHAUST STATUTORY REMEDIES

Because she never says it outright, it is unclear whether the Complaint seeks to allege or pursue a remedy for a breach of the Union's duty of fair representation. But she is clear that she is suing for illegal discrimination. Paragraph 4 alleges that the City "has discriminated against" the Plaintiff "due to her Age and Disability's [sic]" in 2019 and 2020. And paragraph 5 similarly states that District Council 33 "has Discriminated against" her for the same reasons in 2019. Paragraph 45 asserts the City discriminated against her in violation of the Age Discrimination Act of 1967 and the Americans with Disabilities Act of 1990.

No facts contained in the Complaint give rise to any inference that Ms. Fluellen's resignation in November 2019 was coerced or could be categorized as a constructive discharge.[6] Whatever – to the extent the acts attributed to the Union which we have discussed previously were the product of discrimination, she had a duty, prior to suing the union in court for discrimination, to seek relief from the state and federal antidiscrimination agencies. The Plaintiff states she filed an EEOC charge in paragraph 51 ("Petitioner did file an EEOC Complaint for Harassment"). She does not say she

---

[6] Voluntary resignations are not typically considered adverse actions, *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999), unless the employee can show she resigned because the employer "permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998).

13

filed that charge (or any charge) *against the Union*, an allegation necessary to preserve her claim for discrimination against District Council 33 in this case. (Indeed, no such allegation is made in the complaint because Ms. Fluellen never filed any discrimination charge against District Council 33.)

The three employment discrimination statutes we know the Plaintiff does rely on all require administrative exhaustion before she is entitled to commence any law suit in state or federal court.[7] Title VII of the Civil Rights Act requires a charge to be filed first with the Equal Employment Opportunity Commission or a state anti-discrimination agency before commencing an action in federal court. 42 U.S.C. § 2000e-5(f)(1)(A); *Mandel v. M&Q Packaging Corp*., 706 F.3d 157, 165 (3d Cir. 2013). ADA suits may also only be brought against a party previously named in an EEOC action. 42 U.S.C. § 12117(a); *Churchill v. Star Enterprises,* 183 F.3d 184, 190 (3d Cir.1999); *Tlush v. Manufacturers Resource Center*, 315 F. Supp. 2d 650, 654 (E.D. Pa. 2002) (noting that a plaintiff must file a complaint with the EEOC "[p]rior to filing suit in federal court under the ADA"). So, too, must an employee file a charge to trigger her right to sue under the ADEA. 29 U.S.C. § 626(d)(1); *Hildebrand v. Allegheny County*, 757 F.3d 99, 111 (3d Cir. 2014) ("A plaintiff's obligation to timely file with the EEOC is a condition precedent to filing suit under the ADEA."). As the Court of Appeals has explained, "[t]he purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977); *see also Kinnally v. Bell of Pennsylvania,* 748 F. Supp. 1136, 1140 (E.D. Pa.1990) ("The purpose

---

[7] Lack of exhaustion is not a jurisdictional defect, but goes to the merits of the discrimination claim. *Fort Bend County v. Davis,* 139 S. Ct. 1843, 150-51 (2019); *Francis v. Mineta*, 505 F.3d 266, 268 (3d Cir. 2007).

of filing before the PHRC/EEOC is to alert concerned parties of the opportunity for voluntary conciliation without the animosity, expense, and publicity of litigation.").

Filing a discrimination charge with the federal or state anti-discrimination agency is a condition precedent to the filing of suit. *Hildebrand*, 757 F.3d at 113 (while exhaustion of administrative remedies against a defendant may be pleaded generally, failure of the charge to identify a party who the plaintiff later sued requires dismissal of an ADEA claim). But Ms. Fluellen (seemingly because she filed no charge against District Council 33) has pled nothing at all regarding conditions precedent or exhaustion with respect to the Union. Her failure to file any charge against District Council 33 is fatal to her discrimination claim, as it deprived the Union of notice of her claims and the opportunity to conciliate "without the animosity, expense and publicity of litigation." This action should be dismissed for the Plaintiff's failure to exhaust required statutory remedies.

C.   **PLAINTIFF STATES NO ACTIONABLE CLAIM FOR DISCRIMINATION**

The three antidiscrimination laws the Complaint invokes require the Plaintiff to show the following:

a.   **Title VII** (42 U.S.C. §§ 2000e - 2000e-17): "To state a prima facie Title VII . . . discrimination claim against the [Union], plaintiff must establish (1) that the employer breached the collective bargaining agreement with respect to him; (2) that the union violated its duty of fair representation by permitting the breach to go unrepaired; and (3) that there is *some indication that the union's actions were motivated by discriminatory animus*." *Walker v. Pepsi-Cola Bottling Co.*, 2000 U.S. Dist. LEXIS 12635 at *26 (D. Del. Aug. 10, 2000) (emphasis supplied). *See also, e.g., Jones v. School District of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999) (employment benefit sought in a Title VII action must have been denied "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class").

  b. **ADEA** (29 U.S.C. §§ 621 - 634): "The prima facie analysis for an ADEA discrimination claim is almost the same as for Title VII claims." *Lee v. City of Philadelphia*, 2008 U.S. Dist. LEXIS 52820 at *8 (E.D. Pa. July 3, 2008). "To state a claim for age discrimination under the ADEA, a plaintiff must allege that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d at 247. "Without discussion about the age of [her] co-workers [a Plaintiff] cannot demonstrate that h[er] age was a factor in any employer action or workplace conduct. Without any actual assertion of age-based discrimination, [she] does not state a prima facie case." *Lee,* 2008 U.S. Dist. LEXIS 52820 at *9.

  c. **ADA** (42 U.S.C. §§ 12101 - 12213): To establish a claim under the Americans With Disabilities Act, an "otherwise qualified individual" (which we will assume the Plaintiff, during her illness, was) with a disability (which she unquestionably suffered from) "has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). "Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). The ADA requires employers to "make reasonable accommodations" to "known physical or mental limitations" of an "otherwise qualified individual" unless the requested accommodations would cause the employer "an undue hardship on the operation of its business." 42 U.S.C. §§ 12112(b)(5)(A). To establish a failure-to-accommodate claim, the plaintiff must show employer knowledge of her condition, that she made a request to accommodate, that the employer made no good-faith effort to assist the employee, and that the employee could have been reasonably

accommodated. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004). A claim for discrimination requires her to plausibly allege that she was "disabled" within the meaning of the ADA, that she can perform her essential job functions with or without reasonable accommodation, and that she suffered an adverse employment action as a result of her disability. *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) and *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576 (3d Cir. 1998)).[8]

Facts showing that the Union took no action or ignored its obligations to her because of animus prohibited by these statutes must be pled to state an actionable claim for discrimination under the antidiscrimination statutes Ms. Fluellen invokes. She nowhere pleads any facts that District Council 33 harbored any discriminatory intent in addressing the Plaintiff's questions. She neither pressed the Union to proceed with her complaints nor took action herself to do so. It is not apparent from her pleading that the Plaintiff asked the Union to assist in restoring her to the City's employment rolls after she resigned. Nor do the various events she describes give rise to any inference of discrimination or a desire by the Union to thwart her attempts to seek its assistance because of any animus it harbored against her due to her age or disability. The lack of any facts showing discrimination played any role in what the Union did, or didn't do, to assist her requires dismissal for failure to plead a plausible claim of discrimination.

---

[8] "The Court's task" in general, "in deciding a motion to dismiss for failure to state a claim, is to determine whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face." *Dreibelbis v. County of Berks*, 438 F. Supp.3d 304, 309 (E.D. Pa. 2020). And as "the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. . . . it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Id*. at 313 (citations omitted). "For a claim to be 'facially plausible,' it must be the case that the allegations state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s].'" *Id*. at 313-14 (citations omitted).

V. **<u>CONCLUSION</u>**

  The Plaintiff has failed to state a claim upon which relief may be granted. The Motion to Dismiss demurring to the complaint should be granted, and this case should be dismissed with prejudice with respect to District Council 33.

             Respectfully submitted,

             **SPEAR WILDERMAN, P.C.**


             **BY:**  */s/ Samuel L. Spear*
                **SAMUEL L. SPEAR**

Date: August 8, 2023